UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AUSTIN BROOKS, *et al.*,                                    Case No. 1:14-cv-412
    Plaintiffs,                                         Litkovitz, M.J.

    vs.

SUSIE JANE SKINNER, *et al.*,                          **ORDER**
    Defendants.

       Plaintiffs Austin Brooks ("Austin"), Vincent Brooks, on behalf of minor child A.B., and

Randy Brooks, on behalf of minor child N.B., bring this racial discrimination action against

defendants Ripley, Union, Lewis, Huntington School District and School Board ("RULH"),

Martha Hasselbusch, and Susie Skinner under 42 U.S.C. § 1983 and Title VI of the Civil Rights

Act of 1964 ("Title VI"), 42 U.S.C. § 2000d.  This matter is before the Court on defendants'

amended motion to strike the expert report of Dr. Edward Dragan (Doc. 42), plaintiffs' response

in opposition (Doc. 43), and defendants' reply (Doc. 50).  Defendants seek an order striking Dr.

Dragan's expert report (1) as a discovery sanction for plaintiffs' allegedly late filing of the expert

report; and (2) as unreliable and not relevant under *Daubert v. Merrell Dow Pharmaceuticals,

Inc.*, 509 U.S. 579 (1993).

**I.  <u>Whether Dr. Dragan's report should be stricken as a discovery sanction.</u>**

       The Court's calendar order set the deadline for the identification and disclosure of

plaintiffs' expert report as December 15, 2014.  (Doc. 11).  Defendants argue that Dr. Dragan's

report was not provided until May 1, 2015, and should be stricken as a discovery sanction given

plaintiffs' delay in producing the report.  (*See* Doc. 42 at 2-3).  Defendants assert that once

plaintiffs provided the report it "was incomplete" because it did not include the list of cases in

which Dr. Dragan had testified during the previous four years. (*See id.* at 3-4).[1] Defendants

assert that they needed to review the report "in order to fully depose the [p]laintiffs," and

plaintiffs' delays in providing the report resulted in the depositions of plaintiffs not occurring

until May 28, 2015, which was "17 days before the discovery cutoff of June 15, 2015." (*Id.* at

4). Defendants contend that the delay in providing the report was not harmless because it left

defendants "with only a month and a half to review, consult a rebuttal expert, and have the

rebuttal expert prepare a report." (*Id.*). Defendants assert that "[t]here is no justifiable reason for

waiting until late February/early March to take depositions for the benefit of the expert." (*Id.* at

5). Defendants further assert that they "had to scramble just to get prepared for the depositions

of the [p]laintiffs" once the report was provided, leaving defendants "virtually no time to even

depose the expert witness before the discovery cutoff, let alone prepare and respond with a

rebuttal expert in time." (*Id.*).

Plaintiffs respond that the expert had to review over 1,000 pages of discovery documents,

which defendants provided on November 24, December 2, and December 3, 2014, shortly before

the December 15, 2014 expert disclosure deadline set by the Court. (Doc. 43 at 2). Plaintiffs

assert they identified their expert on December 16, 2014, and that defendants did not object to

the one-day delay caused by "[a] misunderstanding between [p]laintiffs' counsel." (*Id.* at 3 &

n.2). Plaintiffs further assert that the defendants' deadline for disclosure of an expert and report

was moved back to June 15, 2015 at a Court status conference held on February 4, 2015. (*Id.* at

3). Plaintiffs contend that the delay in producing their expert report was due in part to the delay

in obtaining the deposition transcripts (received on March 9 and March 17, 2015) and the

---

[1] One month after receiving plaintiffs' expert report, counsel for defendants notified plaintiffs' counsel that a list of cases in which Dr. Dragan had testified was missing from his report. The following day, plaintiffs' counsel sent defendants' counsel the mistakenly missing information. (*See* Jun. 2, 2015 email from plaintiffs' counsel to defendants' counsel, Doc. 43-1, Exh. 10).

2

personal notes of defendant Hasselbusch (received on April 16, 2015) which Dr. Dragan needed

to consider in forming his expert opinion. (*Id.* at 3-4). Plaintiffs assert that defendants had 45

days from the time Dr. Dragan's report was disclosed until defendants' own expert deadline,

which was more than the 30 days defendants had under the original scheduling order. (*Id.* at 4-5).

Plaintiffs contend that discovery sanctions are not warranted because they did not violate any

court order by providing the expert report on May 1, 2015, they otherwise complied with

discovery, and defendants had additional time to identify an expert and produce an expert report

but did not. (*Id.* at 5).

In reply, defendants assert that of the 1,000 pages of discovery documents, "over half of

the information was lists of training attendees and student handbook pages which largely have

nothing to do with the facts of this case." (Doc. 50 at 1). Defendants further assert that Dr.

Dragan's report does not indicate that he even reviewed Hasselbusch's deposition transcript or

personal notes. (*Id.* at 2). Defendants contend that plaintiffs did not maintain "regular

communication" concerning the expert report "from March until it was served in May, save for

one sentence in a letter in April that the report would be forthcoming upon receipt." (*Id.* at 3).

Parties must disclose the identity of expert witnesses, and the disclosure "must be

accompanied by a written report . . . if the witness is one retained or specially employed to

provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(A) and (B). The expert report

must contain "a list of all other cases in which, during the previous 4 years, the witness testified

as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). The identity of expert

witnesses and their reports "shall be made at the times and in the sequence that the court orders."

Fed. R. Civ. P. 26(a)(2)(D).

> If a party fails to provide information or identify a witness as required by Rule
> 26(a) or (e), the party is not allowed to use that information or witness to supply

> evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). The Sixth Circuit has held that Rule 37(c)(1) "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citation omitted).

The Sixth Circuit has identified four factors to be considered in determining whether to impose sanctions under Rule 37:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997) (citation omitted). A late filing "is not an extreme situation showing contumacious conduct." *Id.* at 1278. Moreover, "an innocent plaintiff should not be penalized for the conduct" of counsel. *Id.* Failures to disclose are "relatively harmless" when opposing counsel "kn[ows] who [i]s going to testify and to what they [are] going to testify." *Roberts*, 325 F.3d at 783. In *Roberts*, the Sixth Circuit noted that in the typical case where exclusion is justified under Rule 37(c)(1), opposing counsel either had no advance knowledge that the expert witness would testify or no knowledge of the substance of the expert's reports. *Id.* A violation may also be considered substantially justified or harmless if opposing counsel "knew that they had not received these disclosures and waited for five months to voice an objection" and never filed a motion to compel disclosure. *Id.*

Here, defendants' argument that Dr. Dragan's report should be stricken as a discovery sanction is not well-taken. First, the Court concludes that plaintiffs' delays in producing the

4

expert report were not the result of "willfulness, bad faith, or fault." *See Freeland*, 103 F.3d at

1277. Rather, the delays were due in part to the volume of discovery materials received by

plaintiffs and the timing of their receipt of that information. For example, counsel for the parties

were in regular contact about the need for discovery before Dr. Dragan could complete his report

and the volume of discovery materials that he had to review. (*See* Nov. 12, 2014 email from

plaintiffs' counsel to defendants' counsel, Doc. 43-1, Exh. 1; Dec. 16, 2014 email from

plaintiffs' counsel to defendants' counsel, Doc. 43-1, Exh. 3; Dec. 16, 2014 email from

defendants' counsel to plaintiffs' counsel, Doc. 42, Exh. A). Counsel for the parties were also in

regular contact concerning the scheduling of the depositions necessary for Dr. Dragan to

complete his report and the problems encountered in scheduling the deposition of defendant

Hasselbusch. (*See* emails between the parties' counsel dated Feb. 12, Feb. 16, Feb. 19, Feb. 20,

Feb. 23, Mar. 3, and Mar. 4, 2015, Doc. 43-1, Exh. 6). Plaintiffs' counsel received the

transcripts of the depositions on March 9 and March 17, 2015 and the notes of defendant

Hasselbusch on April 16, 2015. (*See* emails from court reporters to plaintiffs' counsel dated

Mar. 9 and Mar. 17, 2015, Doc. 43-1, Exh. 7; Apr. 16, 2015 email from defendants' counsel to

plaintiffs' counsel, Doc. 43-1, Exh. 8).

Moreover, even if plaintiffs' counsel were at fault for a lack of diligence in producing the

expert report, there is no evidence that plaintiffs themselves were at fault in creating the delay,

and they should not be penalized for counsel's conduct. *See Freeland*, 103 F.3d at 1278.

Second, defendants were not prejudiced by any untimely disclosure of the expert report. The

Court notes that the calendar order was revised following the February 4, 2014 status conference

in this matter. As a result, defendants were given 45 days after receipt of plaintiffs' expert report

to produce their own expert report, as opposed to the 31 days contemplated under the first

scheduling order. (*See* Doc. 11; Doc. 17; and Doc. 42, Exh. D). Further, any disclosure delay in

this case was "relatively harmless" because defendants received advance notice that the expert

witness would testify and the substance of that testimony. *See Roberts*, 325 F.3d at 783. Any

violation was also harmless because defendants knew they had not received the expert report but

they did not move to compel disclosure or "voice an objection" to the Court. *See id.* Finally,

because defendants did not previously raise this issue with the Court before filing their motion to

strike, plaintiffs never received warnings from the Court "that failure to cooperate could lead to

the sanction" that defendants now request. *See Freeland*, 103 F.3d at 1277. Accordingly, the

Court will not strike the expert report as a discovery sanction under Rule 37.

## II. __Whether Dr. Dragan's report should be stricken as unreliable and irrelevant.__

As to the report itself, Dr. Dragan indicated that the purpose of the report was to provide

an opinion as to whether defendants "acted appropriately and reasonably, and within the standard

of professional care when supervising students . . . so as to protect them from racial harassment

as guaranteed under Title VI . . . and District Policy." (Expert Report of Dr. Edward Dragan,

Doc. 42, Exh. E at 1). Dr. Dragan's educational background includes a master's degree in

special education with a focus on administration and supervision, a doctoral degree in

educational administration and supervision, and a master's degree in law with a specialty in

education law. (*Id.* at 2; Curriculum Vitae of Edward Dragan, Doc. 43-1, Exh. 11 at 1). His

professional background includes decades of experience as an educational consultant, teacher,

principal, superintendent, official with the New Jersey State Department of Education, and

adjunct professor of education. (Doc. 42, Exh. E at 2-3; Doc. 43-1, Exh. 11 at 2-8). Dr. Dragan

indicated that the report was based on his review of numerous documents, including the

pleadings, RULH student handbooks, complaint reports, academic and disciplinary records,

medical records, and deposition transcripts of RULH employees (but not defendant Hasselbusch). (Doc. 42, Exh. E at 3-4). Dr. Dragan's report did not indicate that he personally interviewed plaintiffs. (*See id.*).

Dr. Dragan opined that defendants "breached the professional standard of care" and acted with deliberate indifference to the racial harassment plaintiffs experienced. (*Id.* at 4). Dr. Dragan further opined that defendants had a duty under Title VI and district policy to assure that students "were able to access an education in a climate free from harassment, bullying and intimidation, including racial harassment." (*Id.* at 5). Dr. Dragan concluded that defendants' response to reported incidents of racial harassment "was wholly inadequate as evidenced by the fact that the harassment continued to occur and did not become any less severe, pervasive or offensive to the students." (*Id.*). Dr. Dragan stated that "[i]t is well established in the field of education and education administration and supervision as well as student discipline that if a behavior is not altered using the same or similar disciplinary strategies then the approach needs to be modified." (*Id.* at 5-6). Dr. Dragan indicated that there was no evidence that defendants considered or used any strategies to address the racial harassment other than disciplining the offending students, which was not effective. (*Id.* at 6). Dr. Dragan opined that if defendants had attempted alternative methods, the harassment would have ended. (*Id.*). Dr. Dragan indicated that plaintiff N.B. "came to the conclusion that because [defendants] failed to end the racial harassment he needed to leave the district and attend school elsewhere in order to be safe." (*Id.* at 13). Dr. Dragan opined that defendants acted with "severe indifference" to the racial harassment and "utterly failed to implement its policies to train and instruct students about racial harassment." (*Id.*).

Defendants argue that Dr. Dragan should be excluded as an expert witness because his expert report is not reliable and will not assist the jury in understanding the evidence presented. (Doc. 42 at 6). Defendants argue that Dr. Dragan's knowledge "is not based on 'good grounds' as he did not even bother to interview any of the [p]laintiffs." (*Id.* at 7). Defendants contend that the evidence does not support a finding that any of the plaintiffs experienced severe and pervasive harassment and that Dr. Dragan's report does not explain how the incidents contained in the record constitute severe and pervasive harassment. (*See id.* at 7-12). Defendants contend that Dr. Dragan's opinion that defendants' response to the racial harassment was not reasonable or effective would confuse the jury because that opinion contradicts plaintiffs' deposition testimony that they found defendants' responses to be reasonable and effective in several instances. (*See id.* at 12-13). Defendants argue that Dr. Dragan's opinion concerning why N.B. left the school district also contradicts N.B.'s own deposition testimony on the issue. (*See id.* at 14-16). Defendants contend that Dr. Dragan's report "is also unreliable because it fails to properly state the standard for determining liability in this case." (*Id.* at 16). Specifically, defendants argue that Dr. Dragan should not have opined that defendants had a duty to provide an environment "free" from racial harassment and to act "appropriately and reasonably, and within the professional standard of care." (*Id.* at 16-17). Defendants also challenge Dr. Dragan's opinion that defendants acted with "severe" indifference. (*Id.* at 17).

Plaintiffs respond that Dr. Dragan's specialized knowledge and extensive experience in education will help the jury understand the evidence presented at trial. (Doc. 43 at 5). Plaintiffs contend that they retained Dr. Dragan "as an education expert to provide opinions on educational system management, training, supervision of children, bullying, harassment, and the required and appropriate school district response to complaints of racial and other harassment." (*Id.*).

Plaintiffs assert that the admissibility of Dr. Dragan's opinion should be considered under the standard for nonscientific expert testimony. (*Id.* at 6-7). Plaintiffs argue that Dr. Dragan's opinion is admissible because it "relies on the knowledge and experience of his discipline," which Dr. Dragan acquired through numerous advanced degrees and certifications. (*Id.* at 7). Plaintiffs contend that Dr. Dragan's decision not to interview plaintiffs is insufficient to render his report unreliable and that defendants may call that decision into question during cross-examination. (*Id.* at 8). Plaintiffs also assert that under Rule 26, they have until 30 days before trial to submit any supplemental disclosures regarding Dr. Dragan's testimony. (*Id.*).

In reply, defendants assert that plaintiffs have not addressed "the serious failings of Dr. Dragan's methodologies" and that unreliable nonscientific testimony has just as much potential as scientific testimony to confuse the jury. (Doc. 50 at 3). Defendants contend that the "contradictions and omissions" in Dr. Dragan's report show that he "cannot be said to understand the entirety of the evidence itself and so he cannot be expected or permitted to present it to a jury." (*Id.* at 5). Defendants argue that Rule 26 provides for supplementation when information opined upon in the original report has changed and not to remedy an expert's inadequate preparation or incomplete review. (*Id.* at 5-6).

The Federal Rules of Evidence provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "An expert may base an opinion on facts or data in the case that the expert

has been made aware of or personally observed." Fed. R. Evid. 703.

In the exercise of its gatekeeping role under Rule 702, the Court is responsible for

determining the relevance and reliability of all expert testimony. *See Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579

(1993). In *Daubert*, the Supreme Court set out a non-exhaustive list of factors to consider in

determining whether scientific expert testimony is reliable. *Daubert*, 509 U.S. at 593-94. These

include whether the theory or technique can be (and has been) tested; whether the theory or

technique has been subjected to peer review and publication; the known or potential rate of error

and the existence and maintenance of standards controlling the technique's operation; and the

extent to which the theory or technique has been accepted in its field. *See id.* However, "the test

of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor

exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. "[W]here

non-scientific expert testimony is involved, 'the [*Daubert*] factors may be pertinent,' or 'the

relevant reliability concerns may focus upon personal knowledge or experience.' The

gatekeeping inquiry is context-specific and 'must be tied to the facts of a particular case.'"

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) (second

alteration in original) (citations omitted).

The Sixth Circuit has summarized the standard for admissibility of expert testimony as

follows:

> [A] proposed expert's opinion is admissible, at the discretion of the trial court, if
> the opinion satisfies three requirements. First, the witness must be qualified by
> "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.
> Second, the testimony must be relevant, meaning that it "will assist the trier of

fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008). The reliability of an expert opinion should not be confused with its credibility and accuracy. *See id.* at 529. "[A] determination that proffered expert testimony is reliable does not indicate in any way, the correctness or truthfulness of such an opinion." *Id.* "Instead, the requirement that an expert's testimony be reliable means that it must be "supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Id.* (citing *Daubert*, 509 U.S. at 590). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 529-30. "But 'rejection of expert testimony is the exception rather than the rule,' and we will generally permit testimony based on allegedly erroneous facts when there is some support for those facts in the record." *Id.* at 530 (quoting Fed. R. Evid. 702 Advisory Comm. Comment to 2000 Amend.). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Here, defendants' argument that Dr. Dragan's report should be stricken as unreliable and irrelevant is also not well-taken. The Court notes that in a case such as this involving a nonscientific expert in educational administration and policy, many of the *Daubert* factors are not pertinent, and "the relevant reliability concerns may focus upon personal knowledge or experience." *See Surles*, 474 F.3d at 295. Having reviewed Dr. Dragan's curriculum vitae, the Court finds that he is qualified by his knowledge and experience to testify as an expert. Dr. Dragan holds advanced degrees in education, education law, and education administration and supervision. (*See* Doc. 43-1, Exh. 11 at 1). Additionally, he has nearly 50 years of personal

11

experience as an educator, school administrator, educational consultant, and professor. (*See id.* at 2-8). As a school superintendent, Dr. Dragan "[r]eviewed, evaluated, and revised all aspects of school safety and student supervision." (*Id.* at 6). As an official with the New Jersey State Department of Education, he served as manager of the statewide system for reviewing complaints about the implementation of federal and state laws and regulations, and he supervised and conducted complaint investigations in more than 45 schools. (*Id.* at 5). Moreover, Dr. Dragan has published books and peer-reviewed articles on topics such as education law, student safety, and bullying and harassment in schools. (*See id.* at 9-14). Based on this extensive personal knowledge and experience, the Court finds that Dr. Dragan is qualified as an expert to opine on whether defendants "acted appropriately and reasonably, and within the standard of professional care when supervising students . . . so as to protect them from racial harassment." (Doc. 42, Exh. E at 1); *see Surles*, 474 F.3d at 295.

Defendants advance a number of arguments as to why Dr. Dragan's opinions are unreliable. First, defendants argue that Dr. Dragan's opinions are not based on "good grounds" because they are not supported by the evidence, they contradict plaintiffs' deposition testimony, and he failed to interview plaintiffs. (*See* Doc. 42 at 7-12). Dr. Dragan's decision not to interview plaintiffs in preparing his expert report does not change the Court's finding concerning the reliability of his opinions. Rule 703 requires only that an expert's opinion be based "on facts or data in the case that the expert has been made aware of or personally observed," and does not require an expert to obtain knowledge of those facts or data through personal interviews or his own investigation. *See* Fed. R. Evid. 703.

As to defendants' contention that the record does not support Dr. Dragan's conclusion that plaintiffs experienced "severe and pervasive" harassment, the Court finds that Dr. Dragan's

experience provides expertise relevant to the issue of whether the harassment experienced by

plaintiffs was severe and pervasive. In addition to his books and peer-reviewed articles on

bullying and harassment, Dr. Dragan also worked for 11 years as an administrator with the New

Jersey State Department of Education, where he supervised and conducted complaint

investigations in more than 45 schools. (*See* Doc. 43-1, Exh. 11 at 5, 11-14). This experience

qualifies Dr. Dragan to offer an opinion on whether the harassment plaintiffs experienced was

severe and pervasive. *See* Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it

embraces an ultimate issue."); *Shrout v. Black Clawson Co.*, 689 F. Supp. 774, 782 (S.D. Ohio

1988) (permitting a human resources consultant qualified as an expert on corporate policy and

procedure concerning sexual harassment to opine on whether harassment plaintiff experienced

was "outrageous and beyond all bounds of decency" based on expert's "own observations,

during the course of business, of the effects of similar harassment on its victims").

In his report, Dr. Dragan cites instances of harassment experienced by plaintiffs to

support his conclusion that the harassment was severe and pervasive. (*See* Doc. 42, Exh. E at

10-12). The Court finds that defendants' argument that Dr. Dragan's opinion is not supported by

the evidence confuses the reliability of his report with its credibility and accuracy. *See Scrap*

*Metal*, 527 F.3d at 529. As the Court already noted in denying defendants' motion for summary

judgment, the record contains sufficient evidence from which a reasonable jury could conclude

that plaintiffs experienced harassment that was severe and pervasive. (*See* Doc. 60 at 21-23); *see*

*Scrap Metal*, 527 F.3d at 530 ("But 'rejection of expert testimony is the exception rather than the

rule,' and we will generally permit testimony based on allegedly erroneous facts when there is

some support for those facts in the record."). Thus, the proper avenue for defendants to

challenge that evidence and Dr. Dragan's interpretation of it is not the instant motion to strike,

13

but "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

Defendants also challenge Dr. Dragan's opinion that the "racial harassment was intimidating and menacing and substantially interfered with [plaintiffs'] educational benefits." (*See* Doc. 42 at 13-16; Doc. 42, Exh. E at 13). Specifically, Dr. Dragan opined: "In the case of [N.B.], he came to the conclusion that because the District failed to end the racial harassment he needed to leave the district and attend school elsewhere in order to be safe." (Doc. 42, Exh. E at 13). Dr. Dragan also opined that defendants' deliberate indifference to the racial harassment caused "[N.B.] to make a determination against his desire, to leave the District rather than be subjected to such harassment that was not ended by the District." (*Id.* at 4-5). Defendants argue that these statements should be stricken because they are directly contradicted by the deposition testimony of N.B. and his parents. (*See* Doc. 42 at 14-15).

In her deposition, Charlene Brooks, N.B.'s stepmother, testified that it was N.B.'s decision to leave the school district because of the harassment he suffered. (*See* Deposition of Charlene Brooks, Doc. 33 at 7-9). She testified that N.B. reached a mutual decision with his father that he should leave the district. (*Id.* at 12). Randy Brooks, N.B.'s father, testified that he, N.B., and Charlene Brooks decided to move to Kentucky because of the harassment that N.B. was experiencing in the school district. (*See* Deposition of Randy Brooks, Doc. 32 at 10-11). Randy Brooks testified that N.B. "was fine with it" and wanted to leave the district. (*Id.* at 11). He further testified that leaving the district was not "against [N.B's] desire." (*See id.* at 23-25). However, he also testified that N.B. had friends in the district, he would have stayed in the district if not for the racial harassment, and it was possible that N.B. wanted to move because of

14

the harassment alone. (*Id.* at 27). N.B. testified that he left the district because his father did not want him to go to school there anymore. (Deposition of N.B., Doc. 31 at 39-40).

The Court finds that the deposition testimony of N.B., Charlene Brooks, and Randy Brooks does not directly contradict Dr. Dragan's opinion. As to whether N.B. chose to leave the district "against his desire," Randy Brooks testified that N.B. would not have left the district if not for the harassment he experienced. (*See* Doc. 32 at 27). The Court finds that N.B.'s acquiescing to leave the district in response to the racial harassment he was experiencing does not necessarily contradict Dr. Dragan's conclusion that N.B. left the district against his desire. To the extent defendants continue to question the credibility and accuracy of Dr. Dragan's conclusion that the racial harassment "substantially interfered with [plaintiffs'] educational benefits," including the decision of N.B. and his family to leave the district, defendants may rely on "[v]igorous cross-examination" and the "presentation of contrary evidence" at trial. *See Daubert*, 509 U.S. at 596. Thus, the Court will allow Dr. Dragan's opinion on this issue because "there is some support for those facts in the record." *See Scrap Metal*, 527 F.3d at 530.

Second, defendants argue that Dr. Dragan's report is unreliable because it is based on incorrect legal standards. (*See* Doc. 42 at 16-17). Specifically, defendants contend that Dr. Dragan's report incorrectly concludes that defendants had a legal duty to provide an educational environment free from harassment, which is not the law of the Sixth Circuit. (*See id.*). Defendants also argue that Dr. Dragan opines that defendants acted with "severe indifference," which will confuse the jury because the relevant legal standard is whether defendants acted with "deliberate indifference." (*Id.* at 17).

In his report, Dr. Dragan opined that defendants "had a duty to implement . . . District policies and Title VI of the Civil Rights Act in order to assure that its students . . . were able to

access an education in a climate free from harassment, bullying and intimidation." (Doc. 42,

Exh. E at 5).  Dr. Dragan cited to the district policies and the Student Handbook to support his

opinion that defendants had a duty to "[m]aintain an education environment free of all forms of

unlawful harassment." (*Id.* at 6, 7, 9).  District policies 3362 and 5517 and the Student

Handbook address the district's expectations of anti-harassment and non-discrimination. (*See*

Policy 3362-Anti-Harassment Policy, Doc. 48-1, Ex. A; RULH 2014-2015 Student Handbook,

Doc. 48-2, Exh. B at 4).  Under these policies:  "All persons associated with the District,

including but not limited to, the Board, the administration, the staff and the students, are

expected to conduct themselves at all times so as to provide *an atmosphere free from*

*discrimination and harassment*." (*Id*) (emphasis added).  Thus, the Court finds that under the

district's own policies, there is support for Dr. Dragan's conclusion that defendants had a duty to

provide an educational environment free from harassment.  Further, the Court will properly

instruct the jury concerning defendants' legal duties under Title VI to cure any confusion that

might arise from Dr. Dragan's testimony concerning defendants' duties.

However, to the extent Dr. Dragan opines that defendants "acted with deliberate

indifference" or "severe indifference" to the racial harassment experienced by plaintiffs, he is not

qualified to testify or opine on legal issues. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th

Cir. 1994).  "Although an expert's opinion may embrace[] an ultimate issue to be decided by the

trier of fact[,] Fed. R. Evid. 704(a), the issue embraced must be a factual one." *Id.* (internal

quotation marks omitted).  "When the rules speak of an expert's testimony embracing the

ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate

issue or that give the jury all the  information from which it can draw inferences as to the

ultimate issue." *Id*.  With a proper foundation laid, Dr. Dragan may testify, *inter alia*, on

16

whether the incidents to which plaintiffs testified would be considered racial harassment under the district's policies; whether the district complied with its own policies in responding to plaintiffs' complaints and concerns; and whether the district's response was adequate in the school environment to protect plaintiffs. Dr. Dragan may not testify to the legal conclusion that the district was "deliberately indifferent" or "severely indifferent" to the harassing conduct towards plaintiffs. *Id.*

Finally, defendants contend that Dr. Dragan's testimony is unreliable because it contains internal inconsistencies concerning defendants' responses to the racial harassment plaintiffs experienced. (*See* Doc. 42 at 18-19). Defendants assert that the following statements in Dr. Dragan's report are internally inconsistent: (1) defendants "failed to effectively implement [the anti-harassment] policy"; (2) defendants "knew of [the harassment] but implemented, at best, ineffective strategies and methods to end the harassment"; (3) defendants did not "develop[] or implement[] any strategy, other than disciplining the offending students which did not work, to address the severe, pervasive and offensive racial harassment"; and (4) defendants "fail[ed] to make even the slightest effort to train and educate the school population, in particular the students, regarding the prohibition of racial harassment." (*See* Doc. 42 at 18; Doc. 42, Exh. E at 5-6, 13). Defendants further assert that Dr. Dragan acknowledged in his report that defendants "do[] in fact provide training to the students and staff on bullying and harassment." (*See* Doc. 42 at 18).

The Court finds that Dr. Dragan's statements concerning defendants' responses to racial harassment are not internally inconsistent when read in context. The four portions of the report that defendants have cited are all consistent with Dr. Dragan's opinion that defendants did not implement any strategies to address the harassment except disciplining students, which Dr.

17

Dragan believed to be inadequate and ineffective under the circumstances.  (*See* Doc. 42, Exh. E at 5-6, 13).  Further, Dr. Dragan does not acknowledge in his report that defendants "provide training to the students and staff on bullying and harassment."  (*See* Doc. 42 at 18).  Instead, Dr. Dragan acknowledges that defendants had a policy under which they were required to provide training, but he opines that they failed to meet that policy and "failed to provide *adequate* education and/or training to students."  (*See* Doc. 42, Exh. E at 8-9) (emphasis added).  Accordingly, the Court will not strike the expert report as unreliable and irrelevant.

## III. Conclusion

Consistent with the foregoing, defendants' amended motion to strike the expert report of Dr. Dragan (Doc. 42) is **GRANTED** to the extent Dr. Dragan opines that defendants were "deliberately indifferent" or "severely indifferent" to the racial harassment experienced by plaintiffs, but **DENIED** in all other respects.

**IT IS SO ORDERED.**

Date: _11/10/15_

Karen L. Litkovitz
United States Magistrate Judge